## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

DAVID PASCHKET, individually and on behalf of )
all others similarly situated, )
      133 N. Cherry St. )
      Flushing, MI 48433 )
       )

TODD ALDRICH, individually and on behalf of )
all others similarly situated, )
      1529 DeCamp )
      Stockbridge, MI 49285 )
       )

HARRIET McENTIRE, individually and on behalf )
of all others similarly situated, )
      P.O. Box 3085 )
      Park City, UT 84060 )
       )

AMY ASHERMAN, individually and on behalf of )
all others similarly situated, )
      P.O. Box 3085 )
      Park City, UT 84060 )
and )
       )

PADDY WOOD, individually and on behalf of )
all others similarly situated, )
      P.O. Box 3957 )
      Park City, UT 84060 )
                  PLAINTIFFS, )
             v. )
       )

NORTHWEST AIRLINES CORPORATION and )
NORTHWEST AIRLINES, INC. )
      2700 Lone Oak Parkway )
      Eagan, MN 55121 )
       )

DELTA AIRLINES, INC. )
      P.O. Box 20706 )
      Atlanta, GA 30320-6001 )
and )
       )

CONTINENTAL AIRLINES, INC. )
      1600 Smith Street, Department HQSEO, )
      Houston, TX 7702 )
       )
               DEFENDANTS. )

Civil Action No._____

**CLASS ACTION**
**COMPLAINT**

**JURY TRIAL**
**DEMANDED**

## NATURE OF THE ACTION

1.      Plaintiffs Todd Aldrich, David Paschket, Harriet McEntire, Amy Asherman, and Paddy Wood (collectively "plaintiffs") bring this class action complaint on behalf of themselves and on behalf all other similarly situated passengers who purchased airline tickets from defendants on the domestic air routes specified herein, to seek redress for defendants' violations of the federal antitrust laws and the common law of unjust enrichment. As detailed herein, defendants are major domestic airline carriers, and possess monopoly market power in the air travel routes specified herein (i.e. the relevant markets). Defendants use and have used their market power to impose an unlawful and anticompetitive contractual restriction on the airline tickets they sell on their monopoly routes that forbids the consumer purchaser from ever reselling or transferring his or her ticket to a third party. By imposing this anticompetitive and unlawful contractual condition, defendants have been able to unlawfully restrain trade, thwart the emergence of a secondary marketplace for their airline tickets, and cement their monopoly market power in these air routes.

2.      The details of defendants' unlawful conduct are more fully set forth below. The following narrative, however, provides a summarized example for illustrative purposes. Defendant Northwest Airlines Corp., through its subsidiary Northwest Airlines, Inc., possesses monopoly market power in the market for domestic air travel exceeding 150 miles that originates and/or terminates in the Minneapolis-St. Paul Airport. Approximately 80 percent of domestic flights of over 150 miles that originate or terminate in the Minneapolis-St. Paul Airport have been operated by Northwest Airlines during the class period. Defendant Northwest Airlines uses its monopoly market power

in this relevant market to impose a contractual condition, pursuant to which Northwest Airlines bars all of its passenger customers on these travel routes from ever reselling or transferring the airline ticket to and/or from Minneapolis-St. Paul that they have purchased from Northwest Airlines. In the absence of Northwest Airlines' unlawfully imposed restriction, if a passenger paid $ 400 for a ticket from Minneapolis to Oklahoma City, and subsequently found that he was unable to use the ticket, he would have been able to attempt to resell that ticket to a third party to recoup part or all of his original purchase price. In this manner, competition would be present between Northwest Airlines and the secondary marketplace comprised of such passengers seeking to resell their tickets, and the presence of such a secondary marketplace would serve as price-constraining competition on Northwest Airlines' ticket prices to and/or from Minneapolis-St. Paul. After all, no rational consumer would pay Northwest Airlines $ 400 for a ticket to and/or from Minneapolis-St. Paul if the same consumer could purchase the same ticket for the same route and dates on a secondary marketplace such as eBay or the like from a customer who was reselling a ticket that he originally purchased from Northwest Airlines. Northwest Airlines' unlawful contractual restriction barring *all* resales and transfers, however, prevents this competition from ever taking place.

    3.    Northwest Airlines' use of its monopoly market power in the market for domestic airline travel of over 150 miles that originates and/or terminates in Minneapolis-St.Paul in order to impose this contractual bar on resale is an agreement in restraint of trade in violation of Section 1 of the Sherman Act. Northwest Airlines' use of this contractual bar to cement its monopoly in this relevant market also amounts to unlawful monopolization in violation of Section 2 of the Sherman Act.

3

4.      The illustrative example recounted in paragraph 2 is also applicable to the

relevant market for domestic airline travel of over 150 miles that originates and/or

terminates in Detroit's Wayne County Metropolitan Airport, where defendant Northwest

Airlines also has monopoly market power, and where Northwest Airlines uses that market

power to impose the same unlawful and anticompetitive contractual bar on resale or

transfer of its tickets. Similarly, the same unlawful conduct is actionable against the other

named defendants in this action in the respective relevant markets where they possess

monopoly market power, as each of the named defendants uses its market power in its

respective relevant market to impose the same contractual bar on resale of its airline

tickets. Specifically, defendant Northwest Airlines possesses monopoly market power in

the relevant market for domestic airline travel of over 150 miles that originates and/or

terminates in Minneapolis-St. Paul, as well as in the separate relevant market for

domestic airline travel of over 150 miles that originates and/or terminates in Detroit's

Wayne County Metropolitan Airport; defendant Delta Airlines possesses monopoly

market power in the relevant market for domestic airline travel of over 150 miles that

originates and/or terminates in Salt Lake City's International Airport, as well as in the

separate relevant market for domestic airline travel of over 150 miles that originates

and/or terminates in Atlanta's Hartsfield-Jackson International Airport; and, defendant

Continental Airlines possesses monopoly market power in the relevant market for

domestic airline travel of over 150 miles that originates and/or terminates in Houston's

George Bush Intercontinental Airport. In each of these relevant markets, the monopolist

defendant uses its market power to unlawfully impose a bar on the resale or transfer of its

airline tickets. No government regulation, statute, or rule requires the imposition of this contractual bar.

## JURISDICTION AND VENUE

5.    Count I of this complaint is brought to seek monetary and injunctive relief for defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1. This Court, therefore, has subject-matter jurisdiction over this count pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1337.

6.    Count II of this complaint is brought to seek monetary and injunctive relief for defendants' unlawful monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. This Court, therefore, has subject-matter jurisdiction over this count pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1337.

7.    Count III of this complaint is brought to seek disgorgement, restitution, and/or any other redress deemed proper by the Court for defendants' violations of the common law of unjust enrichment. Because this claim arises from the same common nucleus of operative fact as counts I and II of this complaint, this Court has subject-matter jurisdiction over this count pursuant to 28 U.S.C. § 1367.

8.    Each of the defendants transacts business within this judicial district. Further, each of the defendants has an office in this judicial district, and is therefore deemed to reside within this judicial district for purposes of venue under 28 U.S.C. § 1391(b) and 1391(c). For example, defendant Northwest Airlines maintains an office at 901 15th Street, NW, Suite 310 in Washington, DC, and routinely transacts business within this district. Defendant Delta Air Lines, Inc. maintains an office at 1275 K Street, NW Suite 1200 in Washington, DC, and routinely transacts business within this judicial

district. Defendant Continental Airlines maintains an office at 1350 I Street, NW Suite 1250 East in Washington, DC, and routinely transacts business within this judicial district. This Court, therefore, has personal jurisdiction over each of the defendants, and venue is proper in this district pursuant to 28 U.S.C. § 1391 and 15 U.S.C. § 22.

## PARTIES

9.     Plaintiff David Paschket ("Paschket") is a resident of Michigan. During the class period, Paschket purchased a domestic airline ticket from defendant Northwest Airlines to travel to and from the Minneapolis-St. Paul International Airport on Northwest Airlines. Defendant Northwest Airlines used its market power in the relevant market for travel originating and/or terminating in the Minneapolis-St. Paul International Airport to impose a contractual restriction forbidding Paschket and similarly situated passengers from reselling or transferring their tickets.

10.     Plaintiff Todd Aldrich ("Aldrich") is a resident of Michigan. During the class period, Aldrich purchased a domestic airline ticket from defendant Northwest Airlines to travel to and from the Detroit Metropolitan Wayne County Airport on Northwest Airlines. Defendant Northwest Airlines used its market power in the relevant market for travel originating and/or terminating in Detroit's Metropolitan Wayne County Airport to impose a contractual restriction forbidding Aldrich and similarly situated passengers from reselling or transferring their tickets.

11.     Plaintiff Harriet McEntire ("McEntire") is a resident of Utah. During the class period, McEntire purchased a domestic airline ticket from defendant Delta Airlines to travel to and from the Hartsfield-Jackson Atlanta International Airport on Delta Airlines. Defendant Delta Airlines used its market power in the relevant market for travel

originating and/or terminating in Atlanta's Hartsfield-Jackson International Airport to impose a contractual restriction forbidding McEntire and similarly situated passengers from reselling or transferring their tickets.

12.      Plaintiff Paddy Wood ("Wood") is a resident of Utah. During the class period, purchased a domestic airline ticket from defendant Delta Airlines to travel to and from the Salt Lake City's International Airport on Delta Airlines. Defendant Delta Airlines used its market power in the relevant market for travel originating and/or terminating in Salt Lake City's International Airport to impose a contractual restriction forbidding Wood and similarly situated passengers from reselling or transferring their tickets.

13.      Plaintiff Amy Asherman ("Asherman) is a resident of Utah. During the class period, Asherman purchased a domestic airline ticket from defendant Continental Airlines to travel to and from the Houston's George Bush Intercontinental Airport on Continental Airlines. Defendant Continental Airlines used its market power in the relevant market for travel originating and/or terminating in Houston's George Bush Intercontinental Airport to impose a contractual restriction forbidding Asherman and similarly situated passengers from reselling or transferring their tickets.

14.      Defendant Northwest Airlines Corporation is a corporation organized under the laws of the State of Delaware, and having its principal place of business at 2700 Lone Oak Parkway in Eagan, Minnesota 55121. Northwest Airlines Corporation is the indirect parent corporation of defendant Northwest Airlines, Inc. Unless otherwise specified, these two defendants are collectively referred to throughout this Complaint as either "Northwest" or "Northwest Airlines." Northwest operates the world's fourth

largest airline as measured by revenue passenger miles, and is engaged in the business of

transporting passengers and cargo. Defendant Northwest is found within and is a resident

of this judicial district, as it maintains an office located at  901 15th Street, NW, Suite 310

in Washington, D.C.

15.    Defendant Delta Airlines, Inc. ("Delta") is a corporation organized under

the laws of the State of Delaware, and having its principal place of business at Post Office

Box 20706 in Atlanta, Georgia 30320-6001. Delta provides air transportation for

passengers and freight throughout the United States and around the world. As of April 1,

2005, Delta (including its wholly owned subsidiaries, Atlantic Southeast Airlines, Inc.

and Comair, Inc.) served 217 domestic cities in 46 states, the District of Columbia, Puerto

Rico, and the U.S. Virgin Islands, as well as 55 international cities in 36 countries.

Defendant Delta is found within and is a resident of this judicial district, as it maintains

an office located at 1275 K Street, NW Suite 1200 in Washington, DC.

16.    Defendant Continental Airlines, Inc. ("Continental") is a corporation

organized under the laws of the State of Delaware, and having its principal place of

business at 1600 Smith Street, Department HQSEO, in Houston, Texas 7702.

Continental provides air transportation for passengers and freight throughout the United

States and around the world. Defendant Continental is found within and is a resident of

this judicial district, as it maintains an office located at 1350 I Street, NW Suite 1250 East

in Washington, DC.

**RELEVANT MARKETS AND DEFENDANTS' MARKET POWER THEREIN**

17.    For purposes of this complaint, there are five separate relevant markets.

The first relevant product market consists of the market for ticket sales of domestic airline

flights exceeding 150 miles and originating and/or terminating in the Minneapolis-St.

Paul International Airport ("the Minneapolis Airport Market"). The second relevant

product market consists of the market for tickets sales of domestic airline flights

exceeding 150 miles and originating and/or terminating in Detroit's Metropolitan Wayne

County Airport ("the Detroit Wayne County Airport Market"). The third relevant market

consists of the market for tickets sales of domestic airline flights exceeding 150 miles and

originating and/or terminating in Atlanta's Hartsfield-Jackson International Airport ("the

Atlanta Airport Market"). The fourth relevant market consists of the market for ticket

sales of domestic airline flights exceeding 150 miles and originating and/or terminating in

the Salt Lake City Airport ("the Salt Lake City Airport Market"). The fifth relevant

market consists of the market for ticket sales of domestic airline flights exceeding 150

miles and originating and/or terminating in Houston's George Bush Intercontinental

Airport ("the Houston Intercontinental Airport Market.").

     18.     The foregoing relevant markets are recognized as discrete and separate

markets for which there is discrete consumer demand. For distances exceeding 150

miles, there are no economic substitutes to airline travel that pose price-constraining

competition to the pricing of the airline flights forming part of the relevant market. Even

if alternative transportation other than airline travel, such as bus, train, or automobile

travel, were available at a less expensive price, consumers are not likely to forego flying

for such "over 150 mile" trips in favor of such alternative transportation means. Airline

flights posses distinct and unique attributes and characteristics of importance to a

consumer that are not readily available by alternate means of transport such as bus,

vehicle, or railway travel. Most prevalent, airline travel offers consumers the ability to

travel at speeds that far exceed the speeds available on any other mode of transportation, and thereby allow the consumer to arrive at his or her destination faster than on any other means of transport. In addition, airline travel is by far the safest means of travel, particularly for distances exceeding 150 miles.

19.    Consumers, the courts, and defendants also specifically recognize and have recognized that all airline flights departing and/or terminating at a particular airport hub are a proper means of defining a relevant market. A carrier that has market power at a particular hub airport is generally able to use that market power to affect the price of all flights incoming and departing into that hub airport. Further, at each airport there are inherent barriers to entry that prevent the ready entry of competition. For example, airports are inherently constrained by capacity controls, such as the number of available gates, the number of available take-off and landing slots, noise and curfew restrictions, the total passenger capacity that the airport is equipped to handle per day, as well as other limiting factors. For this and other reasons, both courts and defendants, themselves, have previously recognized that flights terminating and originating into or out of a particular hub airport constitute a proper market definition.

20.    In each of the five relevant markets defined herein, one defendant has monopoly market power. Defendant Northwest, for example, has monopoly market power in both the Detroit Wayne County Metropolitan Airport Market and in the Minneapolis-St. Paul Airport Market. During the class period, approximately 80 percent of the domestic flights over 150 miles that depart from and/or arrive to the Detroit Wayne County Metropolitan Airport Market have been Northwest flights. The same is true in the Minneapolis-St. Paul Airport Market— during the class period, approximately 80 percent

10

of the domestic flights over 150 miles that depart from and/or arrive to the Minneapolis-St. Paul Airport have been Northwest flights.

21.    Defendant Continental Airlines possesses monopoly market power in the Houston Intercontinental Airport Market. During the class period, over 80 percent of the domestic airline flights over 150 miles that depart from and/or arrive to Houston's George Bush Intercontinental Airport have been Continental Airlines flights.

22.    Defendant Delta Air Lines possesses monopoly market power in the Atlanta Airport Market and in the Salt Lake City Airport Market. During the class period, approximately 75 percent of the domestic airlines flights over 150 miles that depart from and/or arrive to Atlanta's Hartsfield-Jackson International Airport have been Delta flights. Similarly, during the class period, approximately 75 percent of the domestic airline flights exceeding 150 miles that depart from and/or arrive to Salt Lake City's International Airport have been Delta flights.

23.    Defendants' respective market shares in these relevant markets coupled with the high entry barriers already described (gate capacity limitation, limits on available take-off and landing slots, and passenger capacity limitations at airports, among others) mean that each of the defendants has monopoly market power in their respective relevant market, as described herein (i.e. Northwest has monopoly market power in the Detroit Wayne County Metropolitan Airport Market and in the Minneapolis-St. Paul Airport Market; Delta has monopoly market power in the Atlanta Airport Market and in the Salt Lake City Airport Market; and, Continental has monopoly market power in the Houston Intercontinental Airport Market). As a result of their respective market power, each of

11

the defendants has the power to restrict competition and raise prices in each of the

relevant markets in which that defendant possesses monopoly market power.

## DEFENDANTS' ANTICOMPETITIVE ACTS AND THEIR EFFECTS

24.    Each of the defendants has used its monopoly market power in the

respective relevant markets alleged herein to impose an anticompetitive and unlawful

contractual bar on the resale of that defendants' domestic airline tickets within the

relevant market at issue.

25.    Specifically, defendant Delta has used its monopoly market power in the

Atlanta Airport Market and the Salt Lake City Airport Market in order to impose a

contractual restriction in its airline ticket sales, pursuant to which a consumer passenger

purchasing a Delta ticket on either of these relevant markets is forbidden from reselling or

transferring his airline ticket to a third-party. If the passenger resells or transfers his

ticket, defendant Delta dishonors the ticket, and does not allow the third-party purchaser

to travel on the resold or transferred ticket.

26.    The effect of this contractual restriction is to insulate defendant Delta from

competition from any secondary market sales of airline tickets within the Atlanta Airport

Market and Salt Lake City Airport Market. Thus, consumers wishing to purchase

domestic airline tickets within the Atlanta Airport Market or the Salt Lake City Airport

Market have no effective competitive choice but to purchase Delta tickets sold by Delta

or its agents. In the absence of Delta's unlawfully imposed contractual bar on the resale

or transfer of tickets, consumers would be able to shop competitively for tickets within

the Atlanta Airport Market and the Salt Lake City by comparing the price for the tickets

offered for sale by Delta and its agents against the price being demanded for such tickets by secondary market sellers (i.e. passengers who were reselling their tickets). Delta's contractual bar, however, has prevented and destroyed this price-competition and has forced all consumers of domestic airlines tickets within the Atlanta Airport Market and the Salt Lake City Airport Market to pay supra-competitive prices for their airline tickets.

27.     Defendant Northwest has used its monopoly market power in the Detroit Wayne County Metropolitan Airport Market and the Minneapolis-St. Paul Airport Market in order to impose a contractual restriction in its airline ticket sales, pursuant to which a consumer passenger purchasing a Northwest ticket on either of these relevant markets is forbidden from reselling or transferring his airline ticket to a third-party. If the passenger resells or transfers his ticket, defendant Northwest dishonors the ticket, and does not allow the third-party purchaser to travel on the resold or transferred ticket.

28.     The effect of this contractual restriction is to insulate defendant Northwest from competition from any secondary market sales of airline tickets within the Detroit Wayne County Metropolitan Airport Market and the Minneapolis-St. Paul Airport Market. Thus, consumers wishing to purchase domestic airline tickets within the Detroit Wayne County Metropolitan Airport Market or the Minneapolis-St. Paul Airport Market have no effective competitive choice but to purchase Northwest tickets sold by Northwest or its agents. In the absence of Northwest's unlawfully imposed contractual bar on the resale or transfer of tickets, consumers would be able to shop competitively for tickets within the Detroit Wayne County Metropolitan Airport Market and the Minneapolis-St. Paul Airport Market by comparing the price for the tickets offered for sale by Northwest and its agents against the price being demanded for such tickets by secondary market

13

sellers (i.e. passengers who were reselling their tickets). Northwest's contractual bar, however, has prevented and destroyed this price-competition and has forced all consumers of domestic airlines tickets within the Detroit Wayne County Metropolitan Airport Market and the Minneapolis-St. Paul Airport Market to pay supra-competitive prices for their airline tickets.

29.    Defendant Continental has used its monopoly market power in the Houston Intercontinental Airport Market in order to impose a contractual restriction in its airline ticket sales, pursuant to which a consumer passenger purchasing a Continental ticket in this relevant market is forbidden from reselling or transferring his airline ticket to a third-party. If the passenger resells or transfers his ticket, defendant Continental dishonors the ticket, and does not allow the third-party purchaser to travel on the resold or transferred ticket.

30.    The effect of this contractual restriction is to insulate defendant Continental from competition from any secondary market sales of airline tickets within the Houston Intercontinental Airport Market. Thus, consumers wishing to purchase domestic airline tickets within the Houston Intercontinental Airport Market have no effective competitive choice but to purchase Continental tickets sold by Continental or its agents. In the absence of Continental's unlawfully imposed contractual bar on the resale or transfer of tickets, consumers would be able to shop competitively for tickets within the Houston Intercontinental Airport Market by comparing the price for the tickets offered for sale by Continental and its agents against the price being demanded for such tickets by secondary market sellers (i.e. passengers who were reselling their tickets). Continental's contractual bar, however, has prevented and destroyed this price-

competition and has forced all consumers of domestic airlines tickets within the Houston

Intercontinental Airport Market to pay supra-competitive prices for their airline tickets.

## ANTICOMPETITIVE EFFECTS ON CONSUMERS AND ANTITRUST INJURY

31.     As a direct, proximate and foreseeable result of the foregoing conduct,

each of the defendants has been able to thwart competition, restrain trade, and cement its

monopoly in the relevant markets alleged herein in which that defendant has monopoly

market power.

32.     In the absence of defendants' unlawful contractual prohibitions on ticket

resales or transfers, consumers would be able to sell and purchase airline tickets in an

open secondary market at prices that would not be dictated or controlled by defendants.

Thus, absent defendants' unlawful restrictions on resale or transfer of airline tickets, any

willing seller would be able to sell his or her airline ticket to any willing buyer in an open

marketplace, on the price terms negotiated by the open marketplace.  Defendant airline

carriers would, therefore, face competition from such secondary marketplace sales for

defendants' tickets in the relevant markets alleged herein, and would have to compete

against the pricing prevailing in this secondary marketplace.

33.     Thus, in the absence of defendants' unlawful contractual restrictions on

resale or transfer of tickets, a consumer would not be limited to purchasing his airline

tickets within the relevant market on only the price terms set by defendants.  He would be

able to comparison shop amongst all secondary sellers of such tickets for the best price,

and defendants would also have to compete against such secondary sellers in making their

own pricing decisions.

34.    As a further direct, proximate and foreseeable result of defendants'
unlawful contractual bar on resale or transfer of airline tickets, each defendant has
managed to unlawfully maintain and cement its respective monopoly in the relevant
markets alleged herein in which that defendant is alleged to possess monopoly market
power. In the absence of this unlawful contractual bar on resale or transfer of tickets, a
passenger-consumer would no longer be effectively required to purchase his ticket to
and/or from the Minneapolis-St. Paul Airport or to and/or from the Detroit Wayne County
Metropolitan Airport only from defendant Northwest or Northwest's agents. Instead,
absent Northwest's bar on resale of tickets, such a passenger could have purchased his
tickets to/or from the Minneapolis-St. Paul Airport or to and/or from the Detroit Wayne
County Metropolitan Airport from any number of secondary marketplace resellers of such
tickets. Northwest's anticompetitive contractual bar on resale or transfer of tickets,
however, has the effect of maintaining Northwest's monopoly market power in these
relevant markets, insulating Northwest from competition from other sellers, and
effectively forcing consumers to purchase their airline tickets in these relevant markets
only from Northwest or Northwest's agents. The same is true with respect to all other
named defendants within the relevant markets alleged herein in which those defendants
are alleged to possess monopoly market power.

35.    As a direct, proximate and foreseeable result of defendants' unlawful
conducts, plaintiffs and all the members of the class they seek to represent have been
injured in their business and/or property. Each consumer-passenger of defendants in the
relevant markets in which defendants are alleged to have monopoly power during the
class period has been forced to pay supra-competitive prices for his or her airline

purchase from defendants. Absent defendants' anticompetitive conduct described herein, each of the defendants would have faced competition for their ticket sales from the secondary marketplace, and would no longer be able to demand monopoly prices for the tickets it or its agents sell for travel within the relevant markets alleged herein in which that defendant is alleged to possess monopoly market power. Put simply, if a consumer were free to purchase his airline ticket not only from the defendants or their agents, but also from any willing seller on such secondary marketplaces as eBay and the like, defendants' pricing power would be constrained and checked by such secondary marketplaces. By thwarting and destroying such secondary marketplaces for the relevant markets alleged herein, defendants have been able to charge supra-competitive prices for their airline ticket sales within the relevant market, and have thereby caused plaintiffs and the class members to sustain antitrust injury.

36.    On their face, each of defendants' practices of contractually forbidding any resale or transfer of their airline tickets within the relevant markets alleged herein has the obvious anticompetitive effect of precluding the ability of any willing seller who owns an airline ticket from selling that ticket to any willing buyer at any price negotiated between these two market actors. Defendants' practices, instead, force consumers to purchase their airline tickets at prices dictated only by defendants. To the extent that any procompetitive effects even exist for such conduct, an outright bar on all ticket resales or transfers is an overly broad and unnecessarily restrictive means of achieving any such procompetitive effects. To the extent any such procompetitive effects exist, they can be accomplished through less restrictive and less anticompetitive means than the outright bar on ticket resales or transfers of any kind.

## CLASS PERIOD

37.     The class period for this action includes the period from August 26, 2001

to the present and going forward into the future, as long as defendants continue the

conduct alleged herein.

## CLASS ACTION ALLEGATIONS

38.     Pursuant to Federal Rule of Civil Procedure 23(b)(3) and 23(b)(2),

plaintiffs bring this action as a class action on behalf of themselves and all similarly

situated consumers who, during the class period, purchased airline tickets from any

defendant or its agents for travel in any of the relevant markets in which that defendant

allegedly possesses monopoly market power, as alleged herein. Specifically, plaintiffs

seek to represent a class of consumer purchasers who, during the class period, purchased

a ticket from Northwest or its agents for domestic travel on a trip exceeding 150 miles to

and/or from Minneapolis-St. Paul Airport or for such a flight to and/or from the Detroit

Wayne County Metropolitan Airport. Also included within the class, are all consumer-

purchasers who, during the class period, purchased a ticket from Delta or its agents for

domestic travel on a trip exceeding 150 miles to and/or from the Salt Lake City Airport or

for such a flight to and/or from Atlanta's Hartsfield-Jackson International Airport. Also

included within the class, are all consumer-purchasers who, during the class period,

purchased a ticket from Continental or its agents for domestic travel on a trip exceeding

150 miles to and/or from Houston's George Bush Intercontinental Airport. Specifically

and explicitly excluded from the class are all consumers whose only purchase otherwise

falling within the foregoing class definition was a purchase for a monopoly-to-monopoly

airport travel, which is defined as a purchase for travel on a flight from one of the airports

listed herein where one defendant is alleged to have monopoly market power and into another airport listed herein wherein another defendant is alleged to have monopoly market power (e.g. purchases of a Northwest flight from Minneapolis-St. Paul to Atlanta would be excluded). Similarly excluded from the class are defendants, their employees and relatives, affiliates and agents, as well as all judicial officers and governmental entities.

39.     The class is so numerous that joinder of all putative class members as parties would be impracticable. Although plaintiffs are not presently aware of the exact size of the class, it is reasonable to assume, based on the number of passengers transported by defendants to or from the airports at issue, that the number of class members is likely in the hundreds of thousands or in the millions.

40.     The claims of the named plaintiffs are typical of the claims of the absent class members. Specifically, each of the named plaintiffs purchased a domestic airline ticket from at least one of the defendants in a relevant market defined herein in which that defendant is alleged to have monopoly market power. Further, each of the plaintiffs, like the class members, was subject to a contractual bar imposed by defendants pursuant to which the defendant carriers forbade the named plaintiffs and the class member from reselling or transferring their airline tickets to a third party. The named plaintiffs, therefore, raise the same claims for redress under the Sherman Act and the common law, as is typical of the claims of the absent class members.

41.     There are common questions of law and fact that predominate over individual issues applicable to the individual plaintiffs and class members. Among these common questions of fact and law are the following:

19

a) the definition of the relevant market(s);

b) Defendants' market power within these relevant market(s);

c) whether defendants imposed an unlawful contractual bar on the airline tickets they sold for travel within the relevant market(s) in which defendants' possess monopoly market power;

d) whether defendants' practices amounted to an unlawful restraint of trade in violation of Section 1 of the Sherman Act;

e) whether defendants' practices amounted to unlawful monopolization in violation of Section 2 of the Sherman Act;

f) whether plaintiffs and the class members sustained injury to their business and/or property caused by reason of defendants' alleged violations;

g) whether defendants have been unlawfully enriched at the expense of the class members;

h) the proper measure of damages and any other remedy.

42.    Plaintiffs are all adequate representatives of the interests of the class. All of the plaintiffs are members of the proposed class and have agreed to bring this action on behalf of the interests of the class. Plaintiffs have also retained competent counsel, experienced in antitrust and class action litigation to zealously and diligently protect the interests of the class members.

43.    Defendants have acted or refused to act on grounds generally applicable to the class as a whole, thereby making appropriate injunctive relief and/or corresponding declaratory relief with respect to the class as a whole. Specifically, in violation of the

federal antitrust laws, defendants have imposed a contractual bar forbidding any member of the class from reselling or transferring his ticket, thereby thwarting competition and forcing class members to pay supra-competitive prices for their airline tickets. Plaintiffs and the class members are therefore entitled to declaratory and injunctive relief to enjoin defendants from continuing to implement and enforce this contractual restriction, as they are continuing to do.

44.     A class action is a superior and manageable means of adjudicating this action over individual litigation by each class member, given that the amount at issue for each individual class member is low relative to the cost of bringing suit, such that classwide litigation provides the only realistic alternative for class members to seek judicial redress.

**COUNT I**
**(AGREEMENT IN RESTRAINT OF TRADE- -VIOLATION OF 15 U.S.C. § 1)**

45.     Plaintiffs hereby incorporate by reference all of the allegations of this complaint with the same force and effect as if they had been fully restated herein.

46.     Defendant Northwest has monopoly market power in both the Detroit Wayne County Metropolitan Airport Market and in the Minneapolis-St. Paul Airport Market. Defendant Delta possesses monopoly market power in the Atlanta Airport Market and in the Salt Lake City Airport Market. Defendant Continental possesses monopoly market power in the Houston Intercontinental Airport Market.

47.     In each of the relevant markets described herein wherein a Defendant has monopoly market power, that defendant has used its market power to impose a contractual prohibition on all tickets sold to class members for travel within that relevant

market, pursuant to which that defendant forbids the consumer class member from ever reselling or transferring his airline ticket to any third party. Thus, in the Minneapolis-St. Paul Airport Market and in the Detroit Wayne County Metropolitan Airport Market, defendant Northwest has used its monopoly market power to impose a contractual bar on the resale or transfer of airline tickets purchased by consumers from Northwest or its agents during the class period for travel within either of these relevant markets. In the Atlanta Airport Market and in the Salt Lake City Airport Market, defendant Delta has used its monopoly market power to impose a contractual bar on the resale or transfer of airline tickets purchased by consumers from Delta or its agents during the class period for travel within either of these relevant markets. In the Houston Intercontinental Airport Market, defendant Continental has used its monopoly market power to impose a contractual bar on the resale or transfer of airline tickets purchased by consumers from Continental or its agents during the class period for travel within this relevant market.

48.     As a direct result of this practice, defendants have been able to: thwart competition within the relevant market(s) where they allegedly posses monopoly market power; preclude the formation of a secondary marketplace for the resale or transfer of airline tickets from any willing seller to any willing buyer at prices negotiated between such actors; and, as a result, caused plaintiffs and the class members to pay supra-competitive prices for their airline ticket purchases within the foregoing relevant markets.

49.     Plaintiffs and the class members have been injured in their business and/or property as a direct, proximate, and foreseeable result of defendants' anticompetitive conduct in that they have been deprived a competitive choice of sellers of airline tickets

22

within the relevant markets, and have been forced to pay supra-competitive prices for their airline ticket purchases.

50.    On their face, each of defendants' practices of contractually forbidding any resale or transfer of their airline tickets within the relevant markets alleged herein has the obvious anticompetitive effect of precluding the ability of any willing seller who owns an airline ticket from selling that ticket to any willing buyer at any price negotiated between these two market actors. Defendants' practices, instead, force consumers to purchase their airline tickets at prices dictated only by defendants. To the extent that any procompetitive effects even exist for such conduct, an outright bar on all ticket resales or transfers is an overly broad and unnecessarily restrictive means of achieving any such procompetitive effects. To the extent any such procompetitive effects exist, they can be accomplished through less restrictive and less anticompetitive means than the outright bar on ticket resales or transfers of any kind.

51.    Defendants' contracts with plaintiffs and the class members, which include the contractual bar on resale or transfer of the tickets purchased by plaintiffs and the class members, amount to agreements in restraint of trade in violation of Section 1 of the Sherman Act.

52.    Plaintiffs are entitled to monetary damages, including trebling, as well as an award of their reasonable attorneys' fees and costs, as redress for the injuries they sustained as a direct result of defendants' violations of Section 1 of the Sherman Act.

53.    Defendants continue to impose their contractual bar on the resale or transfer of tickets sold by them or their agents to plaintiffs and the class members, and unless enjoined will continue to do so, thereby continuing to injure plaintiffs and the class

members, as well as the traveling public. Plaintiffs are, therefore, entitled to declaratory and injunctive relief to enjoin these continuing antitrust violations.

## COUNT II
### (UNLAWFUL MONOPOLIZATION—VIOLATION OF 15 U.S.C. § 2)

54.    Plaintiffs hereby incorporate by reference all of the allegations of this complaint with the same force and effect as if they had been fully restated herein.

55.    Defendant Northwest has monopoly market power in both the Detroit Wayne County Metropolitan Airport Market and in the Minneapolis-St. Paul Airport Market. Defendant Delta possesses monopoly market power in the Atlanta Airport Market and in the Salt Lake City Airport Market. Defendant Continental possesses monopoly market power in the Houston Intercontinental Airport Market.

56.    Each defendant has unlawfully maintained its monopoly market power, not by superior skill, acumen or business enterprise, but instead by imposing within each of the foregoing relevant market(s) in which it allegedly possesses monopoly market power a contractual bar on resale or transfer of airline tickets sold by that defendant or its agents.

57.    The contractual bar on resale or transfer of airline tickets ensures that for within a relevant market where any of the defendants allegedly possesses monopoly market power, consumers will have no effective competitive choice but to purchase their airline tickets from that monopolist defendant or its agents, as consumers are forbidden from purchasing their tickets from a secondary reseller of the tickets.

58.    As a direct, proximate, and foreseeable result of defendants unlawful

monopolization in violation of Section 2 of the Sherman Act, defendants have been able to and have charged plaintiffs and the class members monopoly supra-competitive prices for their airline purchases, thereby injuring plaintiffs and the class members in their business and/or property.

59.     Plaintiffs are entitled to monetary damages, including trebling, as well as an award of their reasonable attorneys' fees and costs, as redress for the injuries they sustained as a direct result of defendants' violations of Section 2 of the Sherman Act.

60.     Defendants continue to impose their contractual bar on the resale or transfer of tickets sold by them or their agents to plaintiffs and the class members, and unless enjoined will continue to do so, thereby continuing to injure plaintiffs and the class members, as well as the traveling public. Plaintiffs are, therefore, entitled to declaratory and injunctive relief to enjoin these continuing antitrust violations.

## COUNT III
### (COMMON LAW UNJUST ENRICHMENT)

61.     Plaintiffs hereby incorporate by reference all of the allegations of this complaint with the same force and effect as if they had been fully restated herein.

62.     By purchasing airline tickets from defendants or their agents, plaintiffs and the class members conveyed benefits, in the form of moneys paid, to defendants.

63.     Defendants appreciated these benefits conveyed onto them by plaintiffs and the class members.

64.     Given defendants' conduct in imposing the anticompetitive and unlawful

contractual prohibitions on the resale or transfer of airline tickets they sold to plaintiffs

and the class members, it would be inequitable to allow defendants to continue to retain

the benefits conveyed onto them by plaintiffs.

65.    Accordingly, plaintiffs are entitled to an award from this Court directing

defendants to disgorge their ill-gotten gains so as to make restitution to plaintiffs and the

class members.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs and the class pray for judgment from this Court against

defendants, as follows:

a) That the Court determine that: this action may be maintained as a class action;

plaintiffs and their counsel be designated as class representatives and class counsel,

respectively; and reasonable notice of this action be given to the members of the class;

b) That defendants be permanently enjoined from continuing in any manner the

violations alleged in this complaint;

c) That damages be awarded according to proof, that plaintiffs and the class be

awarded compensatory and treble damages as well as their reasonable attorneys' fees,

costs of suit, and disbursements;

d) That defendants be ordered to disgorge all sums which they obtained by their

wrongful acts;

e) That plaintiffs and the class be awarded pre- and post-judgment interest;

f) That plaintiffs and the class obtain such other and further injunctive and

declaratory relief as allowed under the Sherman and Clayton Acts or other statutes

applicable to this complaint; and,

g) That plaintiff and the class obtain such other and further relief as the Court

may deem just and proper.

Plaintiff demands a trial by jury on all counts.

Dated:  August 26, 2005

Roy A. Katriel, Esq. (D.C. Bar No. 460840)
THE KATRIEL LAW FIRM
1101 30th Street, NW  Suite 500
Washington, DC 20007
Telephone: (202) 625-4342
Facsimile: (202) 625-6774